STATE OF NORTH CAROLINA v. ARTHUR LEARY, JIMMY WILLIAMS,
    WARREN GRIFFIN, RAY VINES, DONNIE REID, WALTER JONES,
    JR., WILLIAM WHITAFORD, EDWARD SPELLER, GILBERT BEST,
    GEORGE GIBSON, OSCAR BURNETT AND JEROME SPRUILL.

(Filed 17 March, 1965.)

**1. Constitutional Law § 18;   Riot § 1—**

   Citizens have the right to assemble peacefully for a lawful purpose;
   nevertheless, even though an assembly be lawful initially it may become a
   riot if at any time its members act with common intent in committing un-
   lawful or disorderly acts in such a manner as to threaten a breach of the
   peace.

**2. Riot § 2—   Evidence of defendant's guilt of participating in riot
   held sufficient to be submitted to jury.**

   Evidence tending to show that a large number of demonstrators gath-
   ered nightly over a long period of time and marched and sang, that the
   crowds were beginning to get out of control and feelings were running
   high, that an officer seeking to stop them from marching to the business
   district on the occasion in question was hit in the face by a pennant or
   stick, and that when he entered the crowd to apprehend his assailant a
   large crowd gathered around him and later, when reinforcements arrived,
   the crowd began to throw rocks and bottles, break windows and destroy
   property, *held* sufficient to overrule nonsuit on the part of the defendants
   identified as members of the crowd and acting with it.

**3. Same—**

   Where the indictment charges that defendants, with others, participated
   in a riot, it is not necessary to show that defendants acted in concert with
   each other in committing breaches of the peace, it being sufficient if the
   evidence show that each defendant acted with other members of the crowd
   in committing the offense.

ON October 18, 1964, the application of defendants Leary, Williams
and Griffin, for a writ of *certiorari* as a substitute for an appeal from a
judgment rendered by Peele, J., at the September 1963 Session of
MARTIN, was allowed.

The Grand Jury, at the September 1963 Session of Martin Superior
Court, by bill, charged that defendants: (a) participated in a riot in
Williamston on August 29, 1963; and (b) incited the riot.

Defendants, other than Oscar Burnett, who was then confined in a
federal penintentiary, were placed on trial at that Session. (The word
"defendants," as subsequently used, does not include Oscar Burnett.)

At the conclusion of the State's evidence, defendants moved for di-
rected verdicts on each charge. The motions were allowed as to all de-
fendants on the charge of inciting a riot. The motions of defendants
Leary, Williams and Griffin, for directed verdicts on the charge of par-

ticipating in a riot, were denied. The motions of the other defendants on this charge were allowed.

The jury found Leary, Williams and Griffin guilty of participating in a riot. Leary was sentenced to prison for two years, Williams and Griffin for twelve months each. Williams' prison sentence was suspended on condition he remain on good behavior for a period of three years. Each excepted and appealed.

Appellants were allowed time beyond the statutory period to serve their case on appeal. The solicitor consented to an additional extension of time. The case on appeal was agreed to on January 5, 1964. It should have been docketed here on January 7, 1964, and calendared for argument during the week beginning February 3, 1964. Instead of perfecting the appeal, appellants, on January 9, 1964, applied to this Court for an order permitting them to appeal as paupers. On the first conference day of the Spring Term 1964, we remanded the cause to the Superior Court of Martin County for an inquiry as to their indigency. That question was not determined until October 1964. We then ordered the cause docketed for argument during the first week of the Spring Term 1965.

*Attorney General Bruton and Deputy Attorney General Moody for the State.*

*Earl Whitted, Jr. and Samuel S. Mitchell for appellants.*

RODMAN, J.  During the trial, appellants noted 49 exceptions to the court's rulings and charge. They have now abandoned all except the single question stated in their brief, *viz.*: "Did the court below err by failing to grant appellants' motion for judgment as of nonsuit?"

Whether defendants moved for nonsuit or for a directed verdict, as stated in the judgment, is not material. Appellants make no contention that the form in which their motion was made deprived them of the opportunity to testify. They did not testify nor did they offer other evidence. Their position is, accepting the State's evidence as true, it is insufficient to require submission to the jury because: (1) It does not establish an unlawful assembly; (2) nor does it show that any appellant committed or aided in the commission of an unlawful act.

The State does not controvert the right of its citizens to assemble peacefully for a lawful purpose. On the other hand, lawful original purpose for an assembly cannot excuse subsequent mob action, resulting in wanton destruction of property, and deliberate injury to officers seeking merely to preserve peace. The law, applicable to such situations, was clearly stated by Denny, J. (now C.J.) in *State v. Cole,* 249 N.C. 733, 107 S.E. 2d 732. He said: "The overwhelming weight of

authority seems to be to the effect, in the absence of a statute to the contrary, that persons may assemble together for a lawful purpose, but if at any time during the meeting they act with a common intent, formed before or during the meeting, to attain a purpose which will interfere with the rights of others by committing disorderly acts in such manner as to cause sane, firm and courageous persons in the neighborhood to apprehend a breach of the peace, such meeting constitutes an unlawful assembly."

Appellants, in their brief filed here, give this factual background to measure the conduct and purpose of those who assembled in Williamston on the night of August 29, 1963. "Prior to August 29, 1963, there were demonstrations in the Town of Williamston. These demonstrations would start out in the form of marches from 150 to 200 people. They would march to various spots, sing a number of songs and march back to the church. There had been some picketing going on in front of local business places and houses. The marches start out peaceful but it was beginning to get out of control." This statement is supported by the testimony, on cross examination, of Sheriff Rawls, a State's witness: "There was a mob of them, they were all over the street and the side walks. It is my best knowledge that feeling were running high. For 32 nights I walked in between the two races, spoke on the loud speaker, got on top of cars and did everything I know of to keep from having a riot in this town. I personally know because for 32 nights, I was out there."

About 9 p.m. on August 29, two police officers, one white, the other Negro, sought to persuade a crowd, composed of about 200 Negroes, not to march to the business district of the town. There was a line approximately 50 yards long. It blocked the street and the sidewalks on each side. It overflowed into the yards of private property owners.

The officers requested the crowd to break up and go home. It disregarded the requests. It pushed forward to the business district. The two officers were forced to yield ground. Many in the crowd were carrying placards or billboards. The officers called for reinforcements. The crowd stopped for a while at the corner of Watts and Main Streets. Defendants Leary, Williams and Griffin were members of the crowd. Sergeant Robinson was hit in the face by a pennant or stick. He entered the crowd to apprehend his assailant. A large crowd gathered around him. The crowd was "hollering, yelling, still quite a bit of profanity being used."

When police reinforcements arrived, the crowd turned toward Harrell Street. "[T]hey began throwing rocks, bricks and bottles at the officers who were training [sic] along behind the group." Bricks, bottles and other missiles were repeatedly thrown at the officers by members of the

crowd. Members of the crowd threw missiles and broke the windows at the service station belonging to Leroy Goddard, and the windows in the Baker Gas Company building. The crowd was lined up in pairs. "They were approximately 100 couples deep. * * * At that time, it was impossible to determine who was paired off with whom. Leary, Williams and Griffin were in the street. Besides those, there were approximately 200 in the street." Appellants were not seen to form a pair. "In terms of distance they were from anywhere from five to as much as eighteen feet apart."

Sheriff Rawls, lending assistance to the city police, described the gathering as: "It was a mob." Leary threw a brick at Sheriff Rawls. Rawls and two other officers sought to arrest Leary. "[H]e fought us and when I placed him under arrest, he came out with a bursted pop bottle and attempted to get on me."

The officers were unable to say any defendant, except the three appellants, was a part of the crowd. The bill charged defendants and others, to the State unknown, participated in the riot. The bill was, therefore, broad enough to permit the conviction of any of the appellants if he aided or encouraged unnamed members of the gathering. *State v. Wynne,* 246 N.C. 686, 99 S.E. 2d 923; 77 C.J.S. 431. There is plenary evidence that each was in the crowd from the moment it started marching, in defiance of the peace officers, until order was restored some 45 minutes or more later. They were shouting, yelling and lending encouragement to others.

The uncontradicted evidence justified the jury in finding: (1) Appellants were members of an unlawful assembly; (2) an intent to assist all other members of the crowd in defying efforts of officers to preserve the peace; (3) intentional assaults on peace officers seeking to perform their duties, and wanton injury to private property.

The court properly submitted the question of defendants' guilt to the jury. *State v. Moseley,* 251 N.C. 285, 111 S.E. 2d 308; *State v. Cole, supra; State v. Hoffman,* 199 N.C. 328, 154 S.E. 314; 77 C.J.S. 428.

Affirmed.